### James M. McManus, Appellee, v. Fred D. Nellis, Appellant.

1. JUDGMENT, § 238*—*when judgment nunc pro tunc may be entered.* Before a judgment *nunc pro tunc* can be entered, it must appear that a judgment in fact has been rendered but not entered of record through some fault, neglect or oversight.

2. JUDGMENT, § 170*—*when is not rendered or directed to be entered.* Where a circuit judge in vacation directed the clerk of court to enter a certain judgment at the opening of the next session of the court, but before which time, however, such judge's term of office expired, and no judgment was entered at the opening of the next session, but later another judge entered a judgment *nunc pro tunc* as of the date of the opening of that session, *held* that no judgment was rendered or directed to be entered by said former judge, and that said entry *nunc pro tunc* was erroneous.

3. OFFICERS, § 70*—*when party entitled to office may recover fees and emoluments.* Where one is elected to office and another without his consent deprives him of the office and collects its fees and emoluments, the party entitled to the office may recover such fees and emoluments.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

4.  OFFICERS, § 70*—*when coroner may not recover fees and emoluments received by person illegally appointed to fill vacancy in office of sheriff.*  Where the coroner of a county assumed the duties of sheriff upon removal of the sheriff by the Governor, and later procured the appointment by the board of county commissioners, believing it was their province to make such appointment, of another man as sheriff for the unexpired term, which exceeded one year, of the former sheriff, and said appointee of the board qualified, acted and collected fees as sheriff until on quo warranto it was determined that his appointment was unlawful, *held* that an action of assumpsit would not lie by said coroner against said appointee for said fees and salary paid him.

Appeal from the Circuit Court of Alexander county; the Hon. WILLIAM E. HADLEY, Judge, presiding. Heard in this court at the March term, 1916. Reversed and remanded. Opinion filed November 13, 1916.

LANSDEN & LANSDEN, for appellant.

REED GREEN, for appellee.

MR. JUSTICE McBRIDE delivered the opinion of the court.

Appellee recovered judgment in the Circuit Court of Alexander county against appellant in an action of assumpsit for money had and received for the amount of $1,887.15, which it is sought to reverse by this appeal.

It appears from the record in this case that Frank E. Davis was elected sheriff of Alexander county, Illinois, for the term of four years ending December 5, 1910, and that on November 18, 1909, he was removed from office by the Governor of the State under a statute permitting such rule. It appears, however, that the Governor did not notify the Board of County Commissioners of Alexander county of such removal until December 14, 1909: That the appellee in 1908 was elected and qualified as coroner of

*See **Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly,** same topic and section number.

Alexander county and upon the removal of Davis, appellee assumed the duties of sheriff, took possession of the office and otherwise discharged his duties as such sheriff, except that he gave no additional bond. It appears from the evidence that Alexander county was under county organization and its business was controlled by three judges. The appellee was a physician of quite an extensive practice in Cairo and did not have the time to attend to his practice and also the duties of sheriff of the county, and was apparently very anxious to be relieved of the burden of acting as sheriff. Upon the removal of Davis as sheriff, the county board conceded it to be its duty to appoint a successor and on December 22, 1909, appointed the appellant Nellis to the office of sheriff for the unexpired term of Davis. Nellis gave bond as sheriff and collector and on December 24, 1909, received from appellee, the coroner, the possession of the office, books, papers and records and all other property and things belonging to the sheriff's office. It further appears that at the time that Nellis was appointed sheriff there were two other applicants and that the appellee was exceedingly anxious to have some one selected as sheriff to relieve him from the duties and burdens of the office. He appeared before the board and requested that the appointment be made so as to relieve him. He requested Judge Butler, judge of the Circuit Court, to interview the county board and urge upon them the necessity of making an appointment. Nellis continued to act as sheriff from the time of his appointment until December 5, 1910, and that the fees collected by him amounted to $1,887.15, and that the expenses of the office were covered by appropriations made by the county board. A quo warranto proceeding was instituted upon the relation of Davis against the appellant in the Circuit Court of Alexander county, and on July 22, 1910, it was determined by said court that appel-

lant was unlawfully appointed and judgment of ouster was entered. An appeal was taken to the Supreme Court where the judgment of the Circuit Court was affirmed [*People ex rel. Davis v. Nellis,* 249 Ill. 12], the Supreme Court holding that the vacancy in the office occurred on November 18, 1909, and that as it would be more than one year before the term of office expired, the county board would have no legal right to make the appointment of appellant as sheriff. On July 15, 1910, the appellee made a demand upon appellant for the office of sheriff then held by him and also notified him that he claimed the fees and salary of the office collected by appellant while acting as such sheriff. This case was heard by Judge Hadley, taken under advisement by him at the October term, 1914, of the Alexander County Circuit Court and nothing was done in the case at the February term, 1915. The May term of the court convened on May 10th and it was on that day adjourned until June 21st. On May 14th, Judge Hadley sent to the clerk of the Circuit Court the following communication:

"EDWARDSVILLE, ILL., May 14, 1915.

DEAR SIR:—On the first day that your Circuit Court is in session I wish you would enter for me in the case of *McManus vs. Nellis,* the following order: And now on this day the court being fully advised in the premises, finds the issues for the plaintiff in the sum of $1,887.15, and judgment on the finding of the court for plaintiff vs. defendant for $1,887.15 and costs. And the defendant excepts and prays an appeal to the Appellate Court of the Fourth District of Illinois, which is allowed upon filing appeal bond in the sum of $2,500.00 within thirty days, to be approved by the clerk of this court, and bill of exceptions within forty days. I also inclose the propositions of law submitted by the defendant which you will mark filed as of the date you entered the order. Please advise the parties to this suit as to the decision of the court that they

may know of it and that they may take such further proceedings as either of them may elect.

With kindest regards, I am,

Very truly yours,

W. E. HADLEY,

Clerk of the Circuit Court,

Cairo.''

No attempt was made to have any order entered on June 21st, but the court was again adjourned until June 29th when appellee presented an application for the entry of a judgment against appellant *nunc pro tunc,* as of June 21, 1915, upon the basis of the letter mailed by Judge Hadley to the clerk. The matter was continued until July 6th; at this date the application for a judgment *nunc pro tunc* as of June 21st was allowed. The term of office of Judge Hadley expired prior to June 21, 1915.

A reversal of this case is insisted upon principally upon two questions: 1st. That the court erred in rendering judgment *nunc pro tunc* as of June 21, 1915. The validity of this order depends upon whether or not a judgment had in fact been rendered by Judge Hadley during his term of office. If such judgment had been rendered and the clerk had failed to enter it as directed, then we think that the court would have been justified in requiring the clerk to carry out the order that was in fact entered; and such action is approved by the Supreme Court in the case of *Metzger v. Morley,* 197 Ill. 208, and this case is cited by counsel as being on parallel with the case at bar and decisive of the right of Judge Hartwell on July 6th to direct the entry of a judgment *nunc pro tunc* of June 21st.

Excepting the rendering of judgments by confession and agreement, there are two modes of rendering judgment recognized by our courts: One is to pronounce judgment in open court, which it then becomes the duty of the clerk to enter upon the records. An-

other mode is the one provided by statute where a judge takes a case under advisement, and his decision in vacation may be entered of record in vacation. And Judge Hadley had the right to send this order and direct that it be entered in vacation if he ·chose so to do, and it was certainly discretionary with him whether he would enter it in vacation or in term time, and, as we think, the real question is, when did he enter the judgment, and when did he intend that the clerk should make it a matter of record, in vacation or in open court? The language of the communication addressed by Judge Hadley to the clerk is: "On the first day that your Circuit Court is in session I wish you would enter for me in the case of *McManus v. Nellis* the following order." Of course, it was expected by Judge Hadley at that time that the court would be in session during his term of office, but, as it happened, his term of office expired before there was any session of court after the clerk received this communication. It is said by counsel that the mere fact of the judge having arrived at a conclusion and having placed that in the hands of the clerk would be sufficient to constitute a filing of the order, although no file mark had been placed upon it. This would probably be true if there had been a direction to enter it, but later on in the communication he states: "I also inclose the propositions of law submitted by the defendant which you will mark filed as of the date you entered the order." Which shows clearly that it was not in the mind of Judge Hadley to enter an order of judgment in vacation but that the judgment order should be entered in term time; and before the day arrived at which the clerk could in any manner make an entry of this order or judgment, Judge Hadley's term of office had expired, and we do not see how it could be said that any valid judgment was entered or directed to be entered by the judge, and if this is true then the Circuit Court erred in directing a judg-

ment *nunc pro tunc*. Before a judgment could be entered *nunc pro tunc* it must appear that one in fact had been rendered but not entered of record through some fault, neglect or oversight. *Chicago, B. & Q. R. R. Co. v. Wingler,* 165 Ill. 634.

It is also insisted that even if the judgment was properly rendered that the court erred in requiring appellant to pay the fees and the salary collected by him to appellee.

The declaration in this case consists of two counts: One is a special count charging that the appellant over the protests of appellee wrongfully and without legal authority took possession of the office of sheriff of Alexander county. The second is the consolidated common counts, including a count for money had and received. The appellee claims the right to recover under this declaration because appellant has money that in justice and equity belongs to the appellee. We agree with the contention of counsel for appellee that the doctrine is well settled in this State that where one is elected to an office and another without his consent deprives him of that office and collects the fees and emoluments of the office, that under such state of facts the party entitled to the office could sue the party depriving him thereof and recover the fees and salary collected, and this doctrine seems to be well sustained by the case of *Mayfield v. Moore,* 53 Ill. 428; *Waterman v. Chicago & I. R. Co.,* 139 Ill. 658. If the appellant had unlawfully without the consent of the appellee deprived appellee of this office, then we would not hesitate to say that he was entitled to the fees and emoluments thereof.

It appears from this record that the appellee was a physician of an extensive practice and did not have the time to attend to the business of the sheriff and his practice, and that he was exceedingly anxious to unload the burdens of the office of sheriff to some one who could discharge the duties so that he could have

the time to devote to his business as a physician. It also appears that it was the impression of the county board and of others interested that the county board had a right to appoint a sheriff to fill this vacancy, and it seems that appellee was of the same mind, as appellee appeared before the county board and said that he wanted to get rid of the sheriff's office so that he could give his attention to his professional business, that he was losing money fooling with the sheriff's office and wanted the county board to appoint a man in his place; and this is substantially the testimony of all three of the county judges. Appellee also called upon Judge Butler and requested him to urge upon the board the necessity of making an appointment soon, and that Judge Butler replied: "I have nothing to do with that but I understand they have offered the place to Charles Cunningham and Charles Carey and that they had declined and that Fred Nellis was the only applicant; that the Board had virtually agreed to give him the appointment and they were only awaiting the opinion of the Attorney General as to whether they could legally make the appointment." The doctor replied, "I wish they would hurry up about it. I didn't expect to be kept here this long. It is interfering with my business and I am losing money every day." He further said, "You would do me a favor if you would go to the Board and hurry up the appointment. I am losing money."

It is true, as contended by counsel, that if the money justly and equitably belongs to appellee that he should be entitled to recover under this action, but our courts have said: "In an action of assumpsit for money had and received, the main inquiry is, whether the defendant holds money which *ex æquo et bono* belongs to the plaintiff. It has been frequently called an equitable action, and, as is said in *Claflin v. Godfrey*, 21 Pick. [Mass.] 1, it approaches nearer to a bill in equity than any other common-law action." *Belden v. Perkins*, 78

Ill. 449; *First Nat. Bank of Springfield v. Gatton*, 172 Ill. 627. "This being an action to recover for money had and received by the defendant to the plaintiff's use, it devolved on the plaintiff to prove that the defendant held money which *ex æquo et bono* he ought to pay to the plaintiff, the usual test being, does the money in justice belong to the plaintiff." *Richolson v. Moloney*, 195 Ill. 578.

Appellee was pleased when the appointment of appellant was made; he did all he could to bring about the appointment; he surrendered the office and the work and the emoluments to the appellant without any protest, and now, after appellant had performed the labor, can it be said that the earnings accruing from this labor equitably and justly belong to the appellee, who sought by every available means to get rid of this burden and was willing that appellant or any one else that the county board would sanction should take up and perform the work? It further appears that no complaint of any kind was made by appellee about appellant holding this office until July 15, 1910, and after an order had been entered by the court, in effect, holding that appellee was not entitled to hold the office; and the judgment rendered herein covers the fees earned during the period prior to as well as after this demand was made, but it is very clear to us that he was not entitled to the fees earned after he had surrendered the office willingly and without protest to appellee, and before the making of such demand.

For the reasons above indicated, we are of the opinion that the Circuit Court erred in rendering this judgment against appellant for the fees earned by him during the term that he held the office of sheriff under such appointment, and the judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*